The People of the State of New York, Respondent, *v.* Robert A. Gunn et al., Appellants.

Neither the original act, providing for the "incorporation of benevolent, charitable, scientific and missionary societies" (Chap. 319, Laws of 1848), nor the various acts amendatory thereof (Chap. 51, Laws of 1870 ; chap. 649, Laws of 1872), authorize the incorporation of a medical college.

The incorporation of such a college, purporting to have been organized under said acts, was not legalized by the provision of the act of 1882 (§ 2, chap. 367, Laws of 1882), declaring "all scientific and all literary colleges and universities organized under said acts," which have reported to the regents within two years to be legally incorporated ; that provision has reference only to scientific and literary colleges, whose incorporation was authorized under said acts, but in whose organization there was some defect.

*It seems* that a medical college can now only be incorporated by special act, or under the act of 1853 (Chap. 184, Laws of 1853), providing for their organization.

. (Argued June 2, 1884 ; decided June 17, 1884.)

Appeal from judgment of the General Term of the Supreme Court, in the first judicial department, entered upon an order made May 8, 1883, which affirmed a judgment in favor of plaintiffs, entered upon an order sustaining a demurrer to defendant's answer. (Reported below, 30 Hun, 322.)

The action is in the nature of a *quo warranto*, brought pursuant to subdivision 3 of section 1948 of the Code of Civil Procedure. The charge is that the defendants are illegally acting as a corporation, under the name and style of "The United States Medical College," without authority, and are exercising privileges and franchises not granted to them by law, and the relief sought is to restrain them from so acting.

It is alleged in the complaint in substance that in May, 1878, the defendants attempted to incorporate themselves as a medical college under the name and style of " The United States Medical College," and to that end filed a certificate of incorporation, approved by a justice of this court, in the county clerk's office, under the act of 1848, for the formation of charitable, literary, scientific and benevolent societies (Laws of 1848, chap. 319), and the acts amending the same, and in pursuance thereof established a so-called medical college in the city of New York, and taught, or professed to teach, the science of medicine, and to graduate matriculants with the degree of doctor of medicine, and to grant them diplomas conferring such degree.

The defendants set up in their answer their incorporation under the act of 1848, and alleged that for more than two years before the passage of the act of the legislature on the 29th of June, 1882, they duly reported to the regents of the university of the State of New York, as a medical college and literary and scientific institution, and claimed that by virtue of the provisions of the acts of the legislature in the complaint stated, in the act of 1882, already mentioned, they were duly incorporated and authorized to perform all and singular the corporate acts in the complaint complained of."

Plaintiff demurred to the answer on the ground " that the same is insufficient in law on the face thereof."

*F. J. Fithian* for appellants. All statutes must have a construction according to the language employed, and where no ambiguity exists, courts cannot correct supposed defects. (*Johnson* v. *H. R. R. R. Co.*, 49 N. Y. 462 ; *Benton* v. *Wickwire*, 54 id. 228 ; *Jones* v. *Harrison*, 6 Exch. 328 ; *Walker* v. *Harris*, 20 Wend. 555.) It is never to be presumed the legislature had nothing in view, or no meaning in any words they have used. A statute, therefore, is to be construed so as, if possible, to give all the words thereof some effect. (Smith on Statutes, § 537 ; *Ex parte Washington*

*Park*, 52 N. Y. 131; *People* v. *Aston*, 6 Daly, 18; 62 N. Y. 623.)

*Edward C. Ripley* for respondents. All legislative grants are to be liberally interpreted in favor of the public, but as against the grantees, strictly construed. Whatever is not unequivocally granted must be taken to have been withheld. (*People* v. *Cothran et al.*, 27 Hun, 344; *People* v. *Cothran et al.*, Special Term.

*Clinton & Clark* for College of Physicians and Surgeons of Buffalo. There is no more valuable aid in construing a statute than contemporaneous construction. (1 Kent's Com. 464, 465, side paging, note *a;* 1 Wheat. 304 [6th ed.], 264; Reports of Regents of the University for 1874 and subsequent years.) A statute must be so construed as to give full effect to all its provisions if practicable. (*In re Trustees, etc., to Acquire Title*, 72 N. Y. 527.) Where there is an apparent discrepancy between two statutes, such construction shall be given that they may both stand. (*Chamberlain* v. *Chamberlain*, 43 N. Y. 424.) As a medical college it cannot be claimed that the corporation is of a business nature, for colleges have always been classed as eleemosynary institutions. (1 Blackstone's Com. 71, side paging; *State* v. *Adams*, 44 Barb. 470; *Dartmouth College* v. *Woodward*, 4 Wheat. 688–9; 1 Kyd on Corp. 25; 1 Woods, 474; *Atty.-Gen.* v. *Whorwood*, 1 Ves. 534; *St. John's College* v. *Todington*, 1 Black, 84; *Phillips* v. *Bury*, 1 Ld. Raym. 5; *S. C.*, 2 Term R. 346; *Atty.-Gen.* v. *Earl of Lonsdale*, 2 Eng. L. & Eq. 55.). It cannot be claimed that the act of 1848 (Chap. 319) and its amendments were never intended to authorize the formation of medical colleges. (*People* v. *Geneva College*, 5 Wend. 121; " Degrees," Kiddle & Schem's Cyclopædia of Education, 208, 210; Knight's Cyclopædia, Volume Arts and Sciences; Encyclopædia Britannica, same volume and title; Appleton's Cyclopædia, same volume and title; Webster's Unabridged Dictionary, word " Degree;" *Wright* v. *Lanckton*, 19 Pick. 228; Smith's Wealth of Nations,

letter to Dr. Cullen in appendix to McCulloch's edition; Ordronaux's Med. Jurisp., § 24.) The power of visitation gives the regents complete control over the abuses in the matters of education, and conferring degrees for the power of visitation includes regulation as well as inspection. (Angell & Ames on Corporations, § 688.) The court frequently looks beyond the words of a statute, and to extrinsic facts, to aid it in interpreting an act. (*Smith* v. *Helmer*, 7 Barb. 416; *People* v. *Schoonmaker*, 63 id. 44.)

EARL, J. The question to be determined in this case is whether "the United States Medical College" of the city of New York was legally incorporated at the time of the trial of this action. The defendants claim that it was legally incorporated under the act chapter 319 of the Laws of 1848, and the several acts amending the same and supplementary thereto. That act was entitled "An act for the incorporation of benevolent, charitable, scientific and missionary societies." And the first section as originally enacted provided that "any five or more persons of full age, citizens of the United States, a majority of whom shall be citizens of this State, who shall desire to associate themselves for benevolent, charitable, scientific or missionary purposes may make, sign and acknowledge a certificate," and become incorporated. That act was amended by chapter 51 of the Laws of 1870, which provided that it should "be deemed to authorize the incorporation of any society for the purpose of establishing and maintaining any educational institution or chapel or place of Christian worship, or any parsonage, rectory or official residence of any bishop, pastor or minister of any Christian church or association;" and section 3 of that act provided that "any university or college incorporated under the said act, or under this act, may take and hold by gift, grant, devise or bequest, property or endowment, not exceeding in value or amount $1,000,000." Section 1 of the act of 1848 was again amended by chapter 649 of the Laws of 1872, so as to read as follows: "Any five or more persons of full age, a majority of whom shall be citizens of and

residents within the State, who shall desire to associate themselves together for benevolent, charitable, literary, scientific, missionary or mission or other Sunday school purposes, or for the purpose of mutual improvement in religious knowledge, or the furtherance of religious opinion, or for any two or more of such objects combined, may make, sign and acknowledge" a certificate and become incorporated.

We are of opinion that these acts did not authorize the formation of a medical college. According to the ordinary use of language a medical college would not be described as a scientific or literary institution. It would not be generally classified as such; and we do not think it was the purpose of the legislature to authorize any five citizens at any time and place, and without any restrictions, to organize an institution which could in its own way, and upon such loose and liberal terms as it chose to prescribe, issue diplomas to its graduates, and confer upon them the degree of doctor of medicine. Medical colleges had before been organized by special acts, or under the general act of April 5, 1813, which was not repealed by the act of 1848. Subsequently, by the act chapter 184 of the Laws of 1853, the legislature dealt with the subject of medical colleges. Section 6 of that act provides, that any citizens, not less than ten in number, who may desire to found and endow a medical or surgical college, or school within this State, may make, sign and acknowledge a certificate and become a corporation, as therein provided. They are required to have an endowment of $50,000, and every college organized under that act has power to grant and confer upon its graduates the degree of doctor of medicine upon the recommendation of the board of professors of the college, and of at least three curators of the medical profession appointed by the trustees; " but no person shall receive a diploma conferring such degree, unless he be of good moral character, and of the age of twenty-one years, and shall have received a good English education, and shall have pursued the study of medicine, and the sciences connected therewith, for at least three years after the age of sixteen years, and have received instruction from some physician or surgeon,

fully qualified to practice his profession until he is qualified to enter a medical college, and (except in cases hereafter provided) shall also after that age have attended two complete courses of lectures, delivered in some incorporated medical college." It cannot be supposed that the legislature intended to authorize the creation and operation of medical colleges under the act of 1848 without any checks or restrictions, while it required that such colleges organized under the act of 1853 should comply with the requirements, perform the duties, and be subject to the restrictions carefully specified in that act. We think that before the passage of the act of 1853, the only way for the incorporation of a medical college was either by special charter granted by the legislature, or under the act of 1813 above referred to. After the act. of 1853, the only general act for the formation of medical colleges was that act, and no medical college could thereafter be organized in this State, except in the way prescribed in that act, or by special charter granted by the legislature.

But it is claimed on the part of the defendants that, if their college was originally illegally incorporated, the corporation was legalized by the act chapter 367 of the Laws of 1882. That act is entitled "An act to restrict the formation of corporations under chapter 319 of the Laws of 1848, entitled 'An act to provide for the incorporation of benevolent, charitable, scientific and missionary societies,' and the acts amendatory thereof, and to legalize the incorporation of certain societies organized thereunder, and to regulate the same." If the act was intended to legalize the incorporation of this college its title is very deceptive and misleading, because, as has already been shown, it had no right to organize under the act of 1848, and was not, therefore, organized thereunder, or in fact in any way. Section 1 of the act of 1882 provides that, "hereafter no literary or scientific college or university shall be incorporated under the provisions of chapter 319 of the Laws of 1848 without the approval of the regents of the university." As we have already stated the terms "literary or scientific college or university" do not embrace a medical college. Section

2 provides that " all scientific and all literary colleges and universities organized under said acts, which shall have reported to the said regents, within the two years last past, are hereby declared legally incorporated." The United States Medical College is not a scientific or literary college, and hence again is not embraced within this language. Reading the language of this act as we find it, it has reference only to scientific and literary colleges, organized and authorized to be organized, under the act of 1848, in whose organization there has been some imperfection, and it was such corporations which are declared to be legally incorporated. We have no means of knowing from any thing contained in this act, or from any thing of which we can take judicial notice, that it was the intention of the legislature, by the language used in the act, to legalize the incorporation of this college. If it was intended to do so, the language used by the framers of the act seems to have been intentionally deceptive. The words " medical college " are not found in the act of 1848, or in any of its amendments; and if it had been intended to deal with a subject of so much importance to the public health and the general welfare it would probably have been mentioned in unmistakable language.

We are, therefore, of opinion that the judgment below is right and should be affirmed, with costs.

All concur.

Judgment affirmed.